

---

Percy Hughes, Hobart, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

**Mattie Viola GRAHAM, Plaintiff In Error,**

**v.**

**The STATE of Oklahoma, Defendant In Error.**

**No. A-12033.**

Criminal Court of Appeals of Oklahoma.

Oct. 20, 1954.

formation in the county court of Choctaw county, Oklahoma, with the offense of operating a motor vehicle while under the influence of intoxicating liquor alleged to have been committed on October 21, 1951, in said county and state. The case was not set for trial until February 26, 1953, at which time a continuance was granted upon the application of the defendant due to necessity of her hospitalization. Thereafter it was reset for trial on September 29, 1953, at which time an application for continuance was interposed on the ground of the absence of a material witness, towit, the defendant's brother, one J. L. Farris, a resident of the state of Texas, who at the time it was alleged was physically unable to attend the trial. An attempt was made to introduce in support of said motion a letter signed by Dr. Paul Pierce of Denison, Texas, which was unverified and which letter the court excluded from the evidence. In the motion for continuance it was alleged among other things that the testimony of Mr. Farris was relied upon under a promise that he would be available when the case was called for trial, and that it was not discovered in time to cause a deposition of this testimony to be taken. It was alleged that his testimony was material and that it would establish the fact that the defendant was in his home on the day in question herein, and that she left his presence a short time before she left Paris, Texas, and before her arrest after crossing from Texas over into Oklahoma, and that during all of said time she had nothing whatsoever to drink. The motion for continuance was denied. Thereafter the case was tried on its merits. The defendant was convicted and her punishment assessed by the jury at a fine of $100; judgment and sentence was entered accordingly, from which this appeal has been perfected.

Hal Welch, Hugo, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

The plaintiff in error Mattie Viola Graham, defendant below, was charged by in-

The charge as laid in the information was supported by the testimony of Highway Patrolmen Cecil Snapp, Ci Killian and Mr. Bill Powell. The testimony of Bill Powell was to the effect that he and his wife were coming back from Paris, Texas, where they had been to a picture show. After crossing the Oklahoma line they overtook the auto-

mobile being driven by the defendant. The automobile was being driven very slowly as though it was in difficulty. Mr. Powell testified the driver seemingly was in difficulty and when she would approach a car she would slow down to possibly 10 or 15 miles an hour. Observing the Choctaw county license plate, he testified, he thought he might be of some help and pulled alongside of her and suggested that they could drive her back to Hugo if she desired. The assistance thus tendered was declined with the statement that she did not need any help. He testified that they followed her across the bridge into Oklahoma where they met the highway patrolman. Flagging down the patrolman they informed him that the woman in a blue Buick appeared to be sick or in some trouble. Then they proceeded on. Later Mr. Killian caught up with them some distance from that point and procured their names as witnesses. On cross examination the testimony of Powell was that she was not weaving down the road though she might have weaved a little bit in her own lane. He related that from what he saw of Mrs. Graham she did not appear like some one who was intoxicated. The testimony of Officer Killian and Officer Snapp was substantially the same and to the effect that they were Highway Patrolmen and had been for some considerable period of time; that their attention was called to the manner in which she was driving on the highway, and that they went north about a mile and came up behind the blue Buick weaving back and forth across the road. During the time they observed her she made one car going south get off the road onto the shoulder and that was when they turned their red light on and drove up behind her car and stopped her; that they stopped the patrol car a few feet behind her. She got her car in reverse and backed up into the patrol car. They opened the door and there was a strong odor of alcohol. Patrolmen Snapp testified that Mrs. Graham laughed and said, "I guess I got too much". He related that her speech was blurred. She had a strong odor of alcohol on her breath, that she told him she had been to Paris to talk to her brother and sister-in-law, that they

were having family trouble and she was trying to be a peace maker, that she had some drinks over there and guess she got too much, that she was not used to drinking; that from their experience and powers of observation the officers both testified that Mrs. Graham the defendant was drunk.

Briefly the testimony of Mrs. Graham in relation to the offense herein alleged was to the effect that she was not intoxicated, that she had had nothing to drink, either before or, from the time she left her brother's house in Paris, Texas, until she was arrested. She did corroborate the patrolmen's testimony to the effect that while she was in Paris she did have a conversation with her brother and his wife in an attempt to effect a reconciliation between them relative to their separation. She admitted that she was drowsy and felt numb. This was attributed to the fact that she had taken a prescribed capsule about 9:00 o'clock p. m. in Paris, Texas. These capsules had been prescribed for her by Dr. H. D. Wolfe. The capsules contained amytal which would affect the individual's locomotion as testified to by the druggist who filled the prescription, that amytal is in the class of barbiturates. The prescription as testified would have a similar effect to intoxication. It would make one sleepy but that it would not have an odor like that of alcohol.

In addition thereto Mrs. W. E. Schooler and Mrs. Stewart both of Hugo, testified as to the reputation of the defendant as a sober and reliable person and related that it was good. Furthermore, an attempt was further made to show that the defendant had gone to Paris, Texas, and picked up two cans of Prestone anti-freeze and that there was a possibility that some of that had escaped into the automobile but in rebuttal Officer Cy Killian testified that Prestone does not contain any alcohol but that it has a glycerine base and has very little if any odor and none akin to that of alcohol. Officer Killian further testified he smelled the breath of the defendant both in the jail and in front of the jail while waiting for the jailer to open the door. It is conceded by the defendant that the evidence and the proof was sufficient to support the

conviction as a matter of law in spite of the great conflict thereof. This concession of course is in keeping with the numerous decisions of this court to that effect. Sadler v. State, 84 Okl.Cr. 97, 179 P.2d 479; Young v. State, 84 Okl.Cr. 71, 179 P.2d 173, and numerous other cases holding in effect that even if there is a sharp conflict in the evidence and different inferences may be drawn therefrom it is the exclusive province of the jury to weigh the evidence and determine the facts. It may appear without analysis there is a conflict in the testimony of Mr. Powell and that of the officers but such is not necessarily so for the reason that Mr. Powell was on the driver's or left hand side of his automobile and his wife was on the right hand side as they pulled alongside of the defendant's automobile and made inquiry concerning her condition and he did not have the opportunity to make the close observation of the defendant that the two patrolmen did.

The sufficiency of the evidence being conceded there is left only the point of the court's failure to sustain the motion for continuance. In this connection a motion for continuance is addressed to the sound discretion of the trial court. The defendant's brother, Mr. Farris, could only testify to what transpired at his home and while he was with the defendant in Paris, Texas. He could not testify to what took place thereafter. The record of the defendant's testimony in chief discloses in relation to the arrest that the patrol car sounded the siren and that the defendant pulled over; Patrolman Snapp opened the door and asked, "What is the matter with you? Have you been drinking?" And he further asked, "Did you stop down at either of those joints?" Of course she testified she did not. It thus appears that there was opportunity for the defendant to have procured intoxicating liquor from the time after she left her brother until the time of her arrest. Under the conditions herewith presented we are of the opinion that the testimony of the absent witness, Mr. Farris, the defendant's brother, would probably not have changed the result. Under such conditions it has been held it is not error to overrule the application for continuance. Seigler v. State, 11 Okl.Cr. 131, 145 P. 308; Hayes v. State, 61 Okl.Cr. 105, 65 P.2d 1242. Hence we cannot say that the court abused its discretion in failing to sustain the motion for continuance. By reason of all the foregoing things the judgment and sentence is accordingly affirmed.

POWELL, P. J., and JONES, J., concur.