# BRANNON v. STATE.

No. A-11371. July 25, 1951.

(234 P. 2d 934.)

262

Earl E. James, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

POWELL, J.   The plaintiff in error, James Oliver Brannon, hereinafter referred to as defendant, was tried and convicted by a jury in the district court of Oklahoma county for the crime of larceny of an automobile, the punishment was left to the court, and defendant was sentenced to a term of three years in the State Penitentiary, this being the minimum sentence provided by the applicable statute, Tit. 21 O. S. 1941 § 1720, as amended, Laws 1945, p. 96, § 1.

In the indictment the offense was alleged to have been committed by the defendant in Oklahoma county on the 10th day of August, 1949, by stealing a 1949 Ford automobile, the personal property of Hugh Carroll.   The case is regularly here on appeal.

For reversal, it is first contended that the trial court erred in overruling defendant's demurrer to the evidence, on the ground of a fatal variance between the allegations in the indictment and the proof relating to the ownership of the automobile alleged to have been stolen.   Counsel for defendant says:

" * * * The proof that a car was taken by someone from a different corporation or person constitutes a fatal variance.   The mere fact that this car was found in the hands of this defendant, and the defendant successfully explains its possession, does not sustain the verdict of the jury in finding the defendant guilty of theft."

Note is taken of the fact that the indictment alleges that the defendant did " * * * take, steal and drive away from the immediate possession and control of the owner thereof, Hugh Carroll, one certain automobile, to-wit: a 1949 Ford Coach, blue color, Motor No. 98 BA 182733, bearing 1949 Oklahoma License No. 1-72346, and the personal property of said Hugh Carroll, * * *."

For the state, Hugh Carroll testified that he had been for about 20 years acting in the capacity of president of the Selected Investments Corporation, the home office being located at 312 N. W. First street, Oklahoma City. That in November, 1949, he purchased the 1949 Ford car involved in the within case, for his company. Counsel for defendant excepted to statements concerning the car in question being owned by the Selected Investments Corporation as being incompetent, irrelevant and immaterial, and for the reason that defendant was charged with stealing the car from Hugh Carroll. The objections were by the court overruled, and counsel for defendant duly excepted.

Witness Carroll described the car involved as being a two-door sedan, blue in color, Motor No. 98 BA 182733, Oklahoma Tag No. 1-72346, and stated that on or about Wednesday, August 10, 1949, the car was parked at the McDonald Service Station, located at 3rd and Hudson, in Oklahoma City. He further testified that W. A. Rigg, vice-president of the company, had looked after the parking of the car there; that this car and other cars were kept by the company for the use of department heads in conducting the company's business, such as viewing and appraising real property, etc. Witness stated that about 5 o'clock in the afternoon of August 10th, he first learned that the car was missing from the lot, and that about 7 o'clock the same evening he checked again and the car was still missing and that he called the police department and reported the car as stolen.

Lynwood O. Neal, employee of Selected Investments Corporation, stated that he needed the use of a car in company business on August 10th, and could not locate it out at the McDonald parking lot, and he commenced checking to determine who last used the car. Witness stated that the company kept a memorandum pad on which users of the car were required to register and that Houston Norman was the last user of the car. The exact hour the car disappeared was not known, but it was first missed about 2 o'clock in the afternoon of August 10, 1949.

Houston Norman, employee of the Selected Investments Corporation, testified that he was the director of his company's automotive finance division; that he used the car involved in the within prosecution on August 9th; that after using it he parked it in the McDonald parking lot at 3rd and Hudson, Oklahoma City, between 10 and 11 o'clock a. m., and that this was on Tuesday, August 9.

D. E. Onstott testified for the state, saying that he was a service station operator at Cushing, Oklahoma, and that he had known James Oliver Brannon, whom he pointed out and identified, for a year or so. That on August 13, 1949, the defendant drove into his station and purchased some gasoline, that he was driving a 1949 Ford coach, and that defendant told him that he was then working in the oil fields for the Wilcox Drilling Company; that he paid for the gasoline by check; that he had a Craig county tag on the car, the first number being a "5", that a record was made of the tag number. Witness further stated that defendant drove the same car in his station again for gasoline on August 15th, and witness advised defendant that he would not accept any more checks, and witness not having any money to pay for the gas obtained, the same was charged. The same tag was still on the car. Witness further stated that the first time defendant drove in his station another boy was in the car with defendant, being about the same size as defendant, but that defendant was driving. Witness investigated and found out that the tag on the car being driven by defendant was registered in another person's name.

T. E. Hall, highway patrolman, testified that he was called on to make an investigation of a blue 1949 Ford; this was on August 14th, and on August 15th

he located the car at a beer "joint" on Highway 33 at the east edge of Cushing; that he had already had a tag-check made on the car and that it did not check out; that he went in the beer place and asked for the driver and that the defendant, Brannon, spoke up and said the car was his. Witness then checked and found the motor number to be 98 BA 182733, this being the motor number of the car reported stolen; that he asked the defendant for his title papers and defendant stated that he had just recently left New Mexico and left the papers out there. He further told witness that he had purchased the car from a person named Cox in Tulsa for $200 cash, but that he did not know this man's first name and did not know his address, and did not have a receipt. Witness stated that defendant was drinking a bottle of beer when he entered the beer place, and that he acted very nervous.

B. F. Cravatt, police officer in the Detective Division assigned to the Auto Theft Division of the Oklahoma City police department, testified that on August 10, 1949, they had a theft reported on a 1949 Ford reported stolen from the Selected Investments Corporation, Mr. Hugh Carroll, the engine number 98 BA 182733, that they made an investigation and on August 15th the car was recovered at Cushing and he learned that it was placed with the Cushing police department.

This completed the evidence on the part of the state. Counsel demurred, assigning as grounds that the evidence was wholly insufficient to support a charge of larceny on the part of the defendant. Counsel also moved for a directed verdict of not guilty. The court overruled both the demurrer and the motion.

Mrs. Albert Jacob, testifying for the defendant, stated that he was her cousin; that she lived in Cushing and was a housewife; that at about 7 o'clock on the morning of August 10, 1949, the defendant and a man whose name she remembers as being Cox, picked her up and drove her to Tulsa, Cox doing the driving. Said she:

"Well, we went to my grandmother's on that day and stayed—we went to mother's first that morning and seen her and then we went to Tulsa, up on the other side of Tulsa by Nowata where my grandmother lives and Jimmy was with us. It took us most of that day to get there and we stayed there with them that night and we all went swimming up there and he was right there with us all night. My sister-in-law went with us.

Witness stated that she did not know who owned the car, but that the Cox boy always drove it. She did not know his first name or where he lived, and had not seen him any more.

Mrs. Pearl Ballard testified that James Oliver Brannon was her nephew; that she lived three and a half miles west of Cushing on Highway 33 and on a farm; that early on the morning of August 10, 1949, he came to her place by car, that some one was in the car with him but she did not see him or pay any attention to the car; that later that day defendant came back and had her daughter and the boy with him; that this was the first time she had seen her nephew in "quite a while". She would not say whether this meant days, weeks, or months.

James Oliver Brannon, the defendant, testified. He denied stealing the blue Ford in question. He claimed that on August 9th, at the 400 Club in Tulsa, a fellow by the name of Cox, whom he had previously met in Texas, and whom he had not seen in two or three years, had the car and he rode out on East Admiral with him; that about 4 o'clock in the morning they left for Cushing and they visited his aunt and cousin, then drove to Talala, and then

back to Cushing on Friday; that they went to Oilton Friday night and returned to Cushing Saturday morning; and he admitted purchasing gasoline as testified by witness Onstott. He claimed that Cox stayed over at Oilton with some girls they had visited and told him to just take the car and to come back and get him the next afternoon. Witness claimed that he had never seen nor heard of Cox since, though he had hunted for him. He denied having been arrested before, but on cross-examination admitted that he was convicted in Meeker, Colorado, in 1947, for beating a board bill and fined $100 and sentenced to serve 30 days in jail. The court instructed the jury that this admission could only be considered in determination of the weight and credit to give the testimony of accused, and could not be considered as proving the guilt or innocence of defendant. Witness denied telling Highway Patrolman Hall that he had purchased the Ford in New Mexico and later on telling him that he had purchased the Ford from a man in Tulsa, denied paying Cox anything for the car.

This completed the evidence in the case. Defendant did not interpose a demurrer or move for a directed verdict.

We have carefully examined the instructions given and find that none were excepted to, but we find the instructions regular and that the issues were fully and fairly submitted.

The record fails to show that counsel for defendant specifically raised the issue of variance in the trial court. Apparently, as indicated by the objections actually interposed, he had in mind that there was a variance, but it is the duty of counsel to be frank with the court and avoid hidden reasons, by clearly and fully stating the reasons for objections interposed, so as to give the court opportunity to make the correct ruling if counsel's objections are determined to be good. Neither was the issue specifically raised in the motion for new trial, nor in the petition in error.

In Thomas v. State, 14 Okla. Cr. 468, 171 P. 747, this court in a Per Curiam opinion, said:

"An assignment of error in that there was a fatal variance between the allegations of information and proof not urged in the court below, and not a ground for reversal presented in the petition in error, need not be considered.

"An assignment that there was a fatal variance between the allegations of the information and the proof is not a matter that goes to the court's jurisdiction."

Also, in Herren v. State, 74 Okla. Cr. 424, 127 P. 2d 215, 217, we said:

"Only * * * questions which were raised in the trial court and an adverse ruling thereon, exceptions taken, and then incorporated in a motion for new trial, and assigned as error in the petition in error, will be considered on appeal, except that jurisdictional questions may be raised at any step of the case."

See, also, White v. State, 81 Okla. Cr. 399, 165 P. 2d 151; Ballew v. State, 55 Okla. Cr. 247, 28 P. 2d 993; State v. Rucker, 22 N. M. 275, 161 P. 337; People v. Fuski, 49 Cal. App. 4, 192 P. 552; People v. Pryor, 17 Cal. App. 2d 147, 61 P. 2d 773; Butler v. State, 198 Ark. 514, 129 S. W. 2d 226; People v. Vinci, 369 Ill. 563, 17 N. E. 2d 19; State v. January, 353 Mo. 324, 182 S. W. 2d 323.

Where counsel for an accused is of the opinion that there is a fatal variance between an allegation in the information and the proof, he should specifically raise the issue at the time the state rests its case in chief or at the conclusion

of all the evidence in the case, by requesting the court to instruct the jury to return a verdict of "not guilty" by reason of the variance specifically alleged and disclosed and set forth. Should the contention of the accused be sustained by the court, Tit. 22 O. S. 1941 § 914, provides for a specific form of verdict, said provision reading, in part: " * * * When the defendant is acquitted on the ground of variance between the charge and the proof, the verdict must be 'not guilty by reason of variance between charge and proof.' "

In the within case, however, even if the defendant's contention of fatal variance had been properly presented in the lower court, under the facts heretofore recited, the trial court would have been justified, and it would have been its duty, to rule that there was no material variance between the allegations of the indictment and the proof with respect to the possession and ownership of the stolen car in view of our statutory provision, Tit. 22 O. S. 1941 § 406, which reads:

"When an offense involves the commission of, or an attempt to commit a private injury, and is described with sufficient certainty in other respects to identify the act, an erroneous allegation as to the person injured, or intended to be injured, is not material."

This court has construed the above statute in many cases, where there are varying fact situations and where is illustrated the application of the principle, and where reasons in support are set out. See Leyerle v. State, 31 Okla. Cr. 179, 237 P. 871; Dickson v. State, 28 Okla. Cr. 378, 231 P. 315; McDaniels v. State, 77 Okla. Cr. 84, 139 P. 2d 191; Jackson v. State, 86 Okla. Cr. 420, 193 P. 2d 895; Cassell v. State, 76 Okla. Cr. 79, 128 P. 2d 1016, 1018, 134 P. 2d 372; Cordonnier v. State, 86 Okla. Cr. 291, 192 P. 2d 298. See also Evans v. State, 60 Ga. App. 597, 4 S. E. 2d 502.

As stated in Cassell v. State, supra:

"It is well settled that in a prosecution for larceny, the name of the owner of the property stolen, is only required to identify the transaction, so that the defendant, by proper pleading may protect himself against another prosecution for the same offense."

Of course, the statement of counsel that defendant successfully explained his possession of the car merely represented counsel's thought, and not that of the jury. And while defendant did testify that he left Tulsa at about 4 o'clock in the morning of August 10th to drive to Cushing, which testimony, is true, tended to establish an alibi, the court gave a very favorable instruction covering alibi, though, of course, it would have been possible for the defendant to have stolen the car in Oklahoma City the early part of August 10th, and have reached Cushing at the time he testified to and which statement is supported by the testimony of two of his close relatives. But the jury found against the defendant. It is the province of the jury to determine whom of the witnesses to believe, and whom to disbelieve, or whose testimony to disregard, and to declare by their verdict what is the truth. Cassell v. State, supra. And as many times declared, where there is substantial evidence to support the verdict, this court will not reverse the conviction on the ground of the insufficiency of the evidence. It is only when the evidence obviously does not warrant the inference of guilt that the court will interfere. And as stated by this court in Farley v. State, 93 Okla. Cr. 192, 226 P. 2d 1002, 1004:

"The presumption arising from the possession of recently stolen property is one of the fact and not of law. It is a circumstance for the jury to consider and weigh along with all the other evidence in the case. If the possession is unexplained, or if it is unsatisfactorily explained, or the explanation, even though plausible, is not believed, the jury will accord it such weight as they

deem right and proper. They are the sole judge as to its weight, and when such fact with the other facts and circumstances in evidence, when given due weight, satisfy the jury beyond a reasonable doubt of defendant's guilt, it is sufficient to sustain the verdict."

Counsel for defendant in brief seeks to question the sufficiency of the indictment. It is contended that the grand jury returning the indictment was improperly called. The record in this case fails to show where the question was ever raised in the trial court. The sufficiency of the indictment was never challenged in any manner. It is sought to raise the question for the first time on appeal. No record is presented here by which an attack on the indictment can be considered.

It is argued that in certain cases heard subsequent to the within case, where the question was raised, the court quashed the indictments. It is not contended that the judgments referred to purported to affect any case where the question was not raised. There is no record to show whether such cases were appealed, or what may have been the final outcome. At all events, the action of a lower court in other cases not here involved could not influence the action of this court, under the state of the record presented. No authority is cited by counsel in support of the proposition so interposed:

We said in Harry v. State, 59 Okla. Cr. 302, 58 P. 2d 340, 341:

"An objection to the sufficiency of an indictment cannot be raised for the first time upon appeal, unless it appears that the indictment does not charge any criminal offense."

Also in Booth v. State, 73 Okla. Cr. 85, 118 P. 2d 274, that:

"Where an objection to the sufficiency of an information is raised for the first time upon appeal, the only question that will be considered by this court is whether the facts stated in the information are sufficient to charge a public offense, so as to confer jurisdiction on the court to try the accused."

After an examination of the entire record, we are satisfied that the substantial rights of the defendant have not been prejudiced by any error of law, and we find no good reason for disturbing the verdict because of insufficient evidence to sustain it. The trial court was lenient in assessing the minimum penalty.

The judgment of the district court of Oklahoma county herein is, therefore, affirmed.

BRETT, P. J., and JONES, J., concur.