Mike FISH, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A–17513.

Court of Criminal Appeals of Oklahoma.

Jan. 10, 1973.

Rehearing Denied Jan. 26, 1973.

Hubert Hargrave, Wewoka, for appellant.

Larry Derryberry, Atty. Gen., Raymond Naifeh, Asst. Atty. Gen., for appellee.

## OPINION

BLISS, Judge:

Appellant, Mike Fish, hereinafter referred to as defendant, was charged, tried, and convicted in the District Court of

Seminole County, Oklahoma, for the offense of Burglary in the Second Degree; his punishment was fixed at two (2) years imprisonment in the state penitentiary, and from said judgment and sentence, a timely appeal has been perfected to this Court.

On the 2nd of July, 1971, an information was filed in Seminole County, Oklahoma, against George Cooper, Richard Paul Fairbanks, and Mike Fish, charging these three individuals conjointly with the crime of Burglary in the Second Degree.

The jury was sworn and empaneled on November 8, 1971, and after a recess until the next morning, the trial began. Before calling the first witness, Mr. Gordon R. Melson, District Attorney, read the information and made an opening statement to the jury. Mr. Hargrave, counsel for the defendant, reserved his opening statement and also asked the court for the rule.

Ted Tucker testified that he was the owner and in possession of a house fifteen miles north and one mile east of Wewoka, Oklahoma on July 2, 1971. He testified personal property was kept at this house and he had been previously burglarized on December 2, 1970. He was present at the house three days before the July, 1971 burglary, and went to the house the evening of July 2, to see if the house was secure. On arriving at the house, he found it had been broken into and vandalized, and that personal property had been stolen therefrom. He further testified no one was present at the house at the time of the burglary. Mr. Tucker called a personal friend, Mr. Rob Pyron, News Editor of the Wewoka Daily Newspaper, who came to the Tucker house, as it existed when Mr. and white photographs of the condition of the Tuker house, as it existed when Mr. Tucker first entered. At the trial Mr. Tucker identified the pictures taken at the home the night of July 2, and stated that they were a fair and accurate representation of its appearance upon his arrival.

Pyron testified to substantially all material facts stated by Mr. Tucker and identified the pictures taken by him at the scene of the crime and stated the pictures were a fair and accurate representation of the appearance of the home at the time he arrived.

Mr. W. C. Merryfield, Sheriff of Seminole County, testified he went to the Tucker home Sunday morning, July 3, 1971, after a call from Mr. Tucker earlier that morning. He stated there was a considerable amount of vandalism and took some more photographs of the condition of the house at that time. Sheriff Merryfield identified photographs he had taken at the scene and stated they were a fair and accurate representation of the appearance of the house upon his investigation. On cross-examination by Mr. Hargrave, the sheriff testified that the remains of the Forty-Niner schoolhouse were located fifteen miles north and one mile east of Wewoka, Oklahoma and Tucker's house was closer to seventeen miles north and one mile east of Wewoka, Oklahoma.

Richard Paul Fairbanks, a co-defendant whose case was severed for separate trial, testified he lived in Wewoka, was nineteen years old, and had known the defendant for approximately five to six years. He testified in substance he was with the defendants Mike Fish and George Cooper on July 2, 1971. Further, he, Fairbanks, Fish, and Cooper drove to the Tucker house and burglarized same, stealing several articles of personal property contained therein. He testified the trio made two trips to remove personal property from the home and that they sold a stereo taken from the house to John Trimble and a television to O. D. Jones. Fairbanks testified there was a division of the proceeds of the goods among himself, Fish, and Cooper. He further identified pictures taken at the scene of the crime as an accurate representation of the house. After the burglary, Fairbanks, Cooper, and Fish hid the balance of the personal property which had been stolen from the house. Fairbanks told Officer Douglas Arnold where the stolen property was hidden and that he was with Officer Arnold when the property was recovered. Fairbanks identified the State's

exhibits as the stolen property previously identified by Tucker.

John Trimble and O. D. Jones substantiated Fairbanks' testimony in that they had purchased personal property from Fish, Cooper, and Fairbanks. They identified at trial those items they had purchased.

Mr. Bob Lovelady, Deputy Sheriff of Seminole County, stated he went with Fish to the Trimble home and recovered the stolen stereo.

Douglas Arnold, Undersheriff of Seminole County, stated he participated in the investigation of the burglary. He picked up the stolen television and thereafter arrested Fairbanks.

The State rested and the defense called Paul Mathews, County Assessor of Seminole County, Oklahoma, who gave further testimony as to the proper location of the Tucker home being seventeen miles north and one mile east of the City of Wewoka, Oklahoma, and that the location in the information of fifteen miles north and one mile east of Wewoka, Oklahoma was the location of the remains of the old Forty-Niner schoolhouse.

The final witness was the defendant Fish, who testified in substance to the same facts related by his accomplice, Fairbanks. He admitted his part in the burglary on July 2, 1971, and further testified he was never confused or in doubt at any time as to the location of the Tucker home.

The defendant raises error in four propositions, only two of which we feel merit discussion. First, the trial court erred in overruling defendant's demurrer to the information, and secondly, that the court erred in refusing to give defendant's requested Instructions Number 1 and Number 2.

 The defendant claims error in the court overruling his demurrer to the information, which was entered and denied after the jury was sworn but before testimony had been heard. It is noted that counsel for the defendant waived arraignment and preliminary examination, entering a plea of not guilty. Generally, a de-

murrer should be taken prior to a plea and if one has pleaded to the merits, the plea should be, first, withdrawn and then a demurrer filed. The demurrer's purpose is to attack the information on its face and not in regard to its substance. In the case at bar, the demurrer to the information was untimely submitted and was properly overruled. In support of this finding see Tharpe v. State, Okl.Cr., 358 P.2d 232, where this Court held:

> "In White v. State, 4 Okl.Cr. 143, 111 P. 1010, this court set forth the rule that where the defendant enters his plea of not guilty and waits until the jury has been empaneled and sworn, and then for the first time questions the sufficiency of the information by objecting to the introduction of evidence on the ground of such insufficiency, the objection should be overruled if by any reasonable construction or intendment the information can be sustained."

See also Catron v. City of Ponca City, Okl.Cr., 340 P.2d 504 and Rhine v. State, Okl.Cr., 336 P.2d 913.

In spite of this view, we shall consider the sufficiency of the information. Title 22 O.S.1971, § 401, stated the requisites for an indictment or information as:

> "The indictment of information must contain:
>
> "1. The title of the action, specifying the name of the court to which the indictment or information is presented, and the names of the parties.
>
> "2. A statement of the acts constituting the offense, in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended."

The necessary portions of the complained-of information read:

> "George Cooper, Richard Paul Fairbanks, and Mike Fish whose more full and correct name to your informant is unknown, did then and there wilfully,

unlawfully, wrongfully and feloniously comit the crime of:

### BURGLARY, SECOND DEGREE

in the manner and form as follows, to-wit:

"Wilfully, wrongfully, feloniously and burglariously, while acting in concert each with the other, did break and enter into a certain building located 15 miles north and 1 mile east of the city of Wewoka, Oklahoma, owned by and in possession of Ted Tucker and Durward Tucker, in which building personal property of value was kept and contained, by breaking open the outer door of said building and entering without the consent of said owner, with the wilful and felonious intent to steal said property, * * *"

As can be determined from the reading of the information the requisites of 22 O.S.1971, § 401, have been met, specifically, *a statement of acts constituting the offense, expressed in ordinary and concise language, the intention of which can be determined by a person of common understanding.* (Emphasis added) We feel that the information sufficiently apprised the defendant of the charge he should have been prepared to meet, and was sufficient to sustain a verdict for Burglary in the Second Degree. As this Court stated in the syllabus of Jones v. State, 94 Okl.Cr. 15, 229 P.2d 613:

"The test of the sufficiency of an information is whether it alleges every element of the offense intended to be charged, and sufficiently apprises defendant of what he must be prepared to meet and so defines and identifies the offense that if convicted or acquitted the accused will be able to defend himself against any subsequent prosecution for the same offense."

The defendant in his brief on appeal claims that the description and location of the alleged burglarized house was insufficient and cites several cases in support of that contention. While the information did identify the location of the building as "located 15 miles north and 1 mile east of the city of Wewoka, Oklahoma," and the evidence showed the real location to be 17 miles north and 1 mile east of the city of Wewoka, Oklahoma, it does not keep the information on its face from being sufficient to allege the crime charged. Although, it does raise a variance between the crime charged and the evidence presented at trial. It is the opinion of this Court that the variance is harmless error in light of the fact that both the defendant and an accomplice testified as to their knowledge of the burglarized location and that at no time were they confused as to what house or what location they were to have burglarized. Under the evidence there was no house at the location described in the information. Even if this variance could be deemed fatal, without previous complaint of the variance at the time of trial, this Court will not consider the question. As this Court stated in Miles v. State, Okl.Cr., 416 P.2d 964, citing Brannon v. State, 94 Okl.Cr. 261, 234 P.2d 934:

"An assignment of error that there was a fatal variance between the allegations of information and proof, not urged in the court below, and not a ground for reversal presented in petition in error, need not be considered."

The defendant's second proposition alleges error in refusing to give defendant's requested Instructions Number 1 and Number 2. The defendant offers no argument and cites no authority in regard to the refusal of requested Instruction Number 1; therefore, this Court will only discuss the latter. The defendant's requested Instruction Number 2 states:

"You are further instructed that Defendants are charged with breaking and entering a *certain* building with intent to steal therein;

"That in this connection you are instructed that if you find from the evidence that defendant entered said building without breaking and entering and

that after entering said building, they decided to take and carry away some of the property, they would not be guilty of Burglary 2nd, Degree, and you should so say by your *verdict.*"

The court's Instructions Number 4 and Number 5 were stated as:

"Every person who breaks and enters any building or any part of any building, room, booth, tent, railroad car, automobile, truck, trailer, vessel or other structure or erection, in which any property is kept, or breaks into or forcibly opens, any coin operated or vending machine or device with intent to steal any property therein or to commit any felony, is guilty of burglary in the second degree.

"The breaking necessary to constitute the crime of burglary may be by any act of physical force, however slight, by which obstructions to entering are forcibly removed, and the opening of a closed door in order to enter a building may constitute a breaking."

Instruction Number 4 is the exact language of 21 O.S.1971, § 1435, which defines Burglary in the Second Degree. As this Court has repeatedly held, an Instruction is sufficient when given in the substantial language of the statutes. Powell v. State, 83 Okl.Cr. 194, 174 P.2d 929; Flanagan v. State, 74 Okl.Cr. 127, 124 P.2d 270. Instruction Number 5 expresses the law in Oklahoma as to the necessity of breaking to constitute the crime of burglary. Yeargin v. State, 54 Okl.Cr. 34, 14 P. 2d 431; Armour v. State, 72 Okl.Cr. 44, 112 P.2d 1116.

The defendant's requested instruction is included in the instructions of the court, and, therefore, properly was refused by the court. The requirements of the instructions to properly state the law, both as to the prosecution and the defense, once met does not require the court to accept additional instructions. As we stated in York v. State, Okl.Cr., 449 P.2d 927:

"Where the court's instructions to the jury completely, accurately, and properly state the law, both as to the prosecution and the defense, in the light of the evidence presented, it is not error to refuse to give additional requested instructions on defendant's theory."

It is therefore the decision of this Court that the judgment and sentence of the District Court be affirmed.

BUSSEY and BRETT, JJ., concur.